**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **ERIC BENTE and TAMARA HARRISON,** individually and on behalf of all persons similarly situated, | : : : : | **Civil Action No.:** **Collective and Class Action Complaint** **Jury Trial Demanded** |
| **Plaintiffs,** | : | |
| v. | : : : | |
| **NORTH STAR INSURANCE ADVISORS, LLC,** | : : | |
| **Defendant.** | : : : | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Eric Bente ("Bente") and Tamara Harrison ("Harrison"), through their undersigned counsel, individually, and on behalf of all persons similarly situated, bring this lawsuit against Defendant North Star Insurance Advisors LLC ("North Star" or "Defendant") seeking all available remedies under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*, ("FLSA"), and applicable California wage-and-hour laws including the Private Attorneys General Act ("PAGA") of the California Labor Code. The allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and on information and belief as to the acts of others.

## INTRODUCTION

1.      Plaintiffs and members of the proposed class and collective (hereinafter referred to collectively as "Insurance Agents") carried out Defendant's insurance sales business and were misclassified as independent contractors. Despite promising Insurance Agents with independence plentiful customer leads to make large profits, Defendant controlled every aspect of their

employment, and they made well below minimum wage every week. Plaintiffs seek to represent other current and former independent contractors who work or worked for Defendant as Insurance Agents in the United States. Defendant's unlawful patterns, practices, and conduct described herein apply broadly to members of the proposed class and collective, in violation of the FLSA and California Labor Code.

2.      Plaintiffs Eric Bente and Tamara Harrison also seek to represent current and former independent contractors who work or worked as Insurance Agents in California in this class action, and allege that Defendant engaged in unlawful patterns, practices, and conduct described herein in violation of California's wage-and-hour laws.

3.      Defendant knowingly and improperly fails to pay Insurance Agents for all hours worked. Insurance Agents who work for North Star do not receive minimum wage, overtime pay, reimbursement for business expenses, or the meal and rest breaks they are entitled to, and they are subject to unlawful commission claw backs.

4.      California Labor Code §§ 2698, et seq., grant California employees the right to bring a civil action for violation of any provision of the Labor Code on behalf of themselves and other current or former employees to recover civil penalties. In passing PAGA, the California Legislature "declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations." Arias v. Super. Ct., 46 Cal. 4th 969, 980 (2009).

5.      PAGA permits aggrieved employees to collect the civil penalties authorized by law

and normally collectible by the Labor and Workforce Development Agency ("LWDA") or any of its departments or divisions. See Cal. Lab. Code § 2699(a). However, because the action is brought on behalf of the state, 75% of the fees collected are distributed to the LWDA for the enforcement of labor laws and for the education of employers and employees. The remaining 25% is shared between the aggrieved employees. See Cal. Lab. Code § 2699(i).

6.     PAGA provides that any civil penalty assessed and collected by the LWDA for violations of applicable provisions of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.

7.     California Labor Code § 2699.3 governs PAGA actions for civil penalties arising from violations of California Labor Code §§ 201-203, 226, 510, 1174, 1182.11, 1194, 1197, and 1198, which provisions require employers to: pay employees for all hours worked; to pay employees no less than one-and-one-half times their regular rate of pay for all hours worked over eight in a work day or over forty in a work week; to provide employees with timely, accurate, itemized wage statements; and to pay all outstanding wages immediately when an employee quits or is discharged.

8.     Pursuant to Labor Code § 2699.3(a)(1)(A), before commencing a civil action, an aggrieved employee must first give notice by online filing with the LWDA and by certified mail to the employer of the alleged violations, including the facts and theories supporting the allegations. If the LWDA fails to investigate the alleged violations within sixty-five calendar days of the date of the notice, then the aggrieved employee may file a civil action to seek penalties.

9.     On April 17, 2023, Plaintiffs provided written notice of these alleged violations, including the facts and theories supporting his allegations, to the LWDA via online submission,

with a certified copy mailed to Defendant. More than sixty-five calendar days have passed since the date notice was provided to the LWDA and Defendant. Accordingly, Plaintiffs have satisfied the administrative prerequisites under California Labor Code § 2699.3(a) to recover civil penalties against Defendant for violations of California Labor Code §§ 201-203, 226, 510, 1174, 1182.11, 1194, 1197, 1198.

## JURISDICTION AND VENUE

10.     Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

11.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts.

12.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendant resides in and/or conduct business in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this Judicial District.

## PARTIES

13.     Plaintiff Eric Bente is a citizen of California and resides in Temecula, California. Plaintiff Bente worked remotely for Defendant as an Insurance Agent in Los Angeles, California from approximately April 6, 2022 to June 2022. Pursuant to 29 U.S.C. § 216(b), Plaintiff Bente has consented to be a plaintiff in this action. *See* Ex. A.

14.     Plaintiff Tamara Harrison is a citizen of California and resides in Sun City, California. Plaintiff Harrison worked remotely for Defendant as an Insurance Agent in Sun City, California from approximately July 2022 to September 2022. Pursuant to 29 U.S.C. § 216(b), Plaintiff Harrison has consented to be a plaintiff in this action. *See* Ex. B.

15.     Defendant North Star Insurance Advisors LLC ("Defendant" or "North Star") is a limited liability company organized under the laws of Missouri with headquarters located at 7700 Bonhomme Avenue, 7th Floor, St. Louis, Missouri 63105. North Star may be served with process by serving its registered agent at the same address.

16.     At all material times, Defendant has been an employer within the meaning of the FLSA under 29 U.S.C. § 203(d) and California law.

17.     The unlawful acts alleged in this Complaint are committed by Defendant and/or Defendant's officers, agents, employees, or representatives, while actively engaged in the management of Defendant's businesses or affairs and with the authorization of the Defendant.

18.     Defendant employs individuals, including Insurance Agents, in California and other states.

19.     Plaintiffs and Collective and Class members, as defined below, were and are employees of Defendant within the meaning of 28 U.S.C. § 203(e), California state law, and the California Labor Code § 500-558.

20.     Defendant employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as described by 29 U.S.C. §§ 206 – 207.

21.     Defendant had, and continues to have, annual gross business volumes of not less than $500,000, thereby exceeding the statutory standard. 29 U.S.C. § 203(s)(1)(A)(ii).

## COLLECTIVE AND CLASS DEFINITIONS

22.     Plaintiffs bring Counts I through II of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action, individually, and on behalf of the following collective:

> All current and former Insurance Agents who were paid by Defendant North Star
> to sell life insurance in the United States during the time period from three years

5

prior to the filing of this Complaint until resolution of this action (the "Collective").

23.     Plaintiffs bring Counts III through IX of this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and the following class:

All current and former Insurance Agents who were paid by Defendant North Star to sell life insurance in California during the time period from three years prior to the filing of this Complaint until resolution of this action (the "California Class").

24.     Plaintiffs also bring Counts III through XII of this lawsuit as a representative action pursuant to PAGA, on behalf of themselves and the following aggrieved employees:

All current and former Insurance Agents who were paid by Defendant North Star to sell life insurance in California during the time period from April 17, 2022 (one year prior to Plaintiffs' PAGA notice), and the present (the "Aggrieved Employees").

25.     The FLSA Collective, the California Class, and the Aggrieved Employees are together referred to as the "Classes."

26.     Plaintiffs reserve the right to redefine the Classes prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTUAL BACKGROUND

### I.     The Nature of Insurance Agents' Work

27.     North Star is a large insurance marketing entity specializing in selling final expense insurance on behalf of insurance agents over the phone. Final expense insurance is insurance that covers burial and funeral expenses after an individual has died.

28.     Selling insurance products is the primary aspect of North Star's regular business. North Star's earnings are driven by the number of final expense insurance products and services sold by Insurance Agents.

29.     North Star hires Insurance Agents to sell final expense life insurance for three (3)

different insurance agencies throughout the United States. Insurance Agents work either in North Star's office or remotely, in the Insurance Agent's home office.

30. Insurance Agents provide services that are an integral part of Defendant's business enterprise by carrying out Defendant's policies and procedures to serve Defendant's customers. The work performed by Insurance Agents is within the usual course of North Star's business, i.e., providing services to support that sale of insurance policies to carriers' customers.

31. Insurance Agents have little or no authority to refuse or negotiate North Star's rules and policies; they must comply or risk termination.

32. Prior to beginning their employment, Insurance Agents receive a non-negotiable contract that must be signed to begin working for North Star. The contract states, in addition to other things, that North Star "shall be solely responsible for determining the time, nature, content and manner of services and products it provides…". See Ex. C.

33. The Insurance Agents generally do not work in an independently established trade, occupation, profession, or business. Instead, as required by their contracts, Insurance Agents perform services exclusively for North Star's clients and are not allowed to have other employment.

34. North Star's contract states: "Agent agrees to write Final Expense insurance policies for Carrier he or she is contracted with through Company exclusively and must terminate all other Carrier contracts prior to the Star of training. Insurance Agent agrees not to get appointed with any other carriers while this agreement is active." See Ex. C. North Star reiterated this language to Plaintiff Bente in an email he received prior to beginning his job.

35. North Star's contract also stipulates that Insurance Agents cannot "solicit, recruit, hire or otherwise interfere with the contract/status of any of [North Star's] employees, agents,

vendors and/or contracts" for twelve months after an Agent leaves. See Ex. C.

36. North Star controls and directs the work of Insurance Agents, both under the terms of the contract signed by Insurance Agents and in fact, including controlling wages, hours, and the means and methods by which Insurance Agents' carry out their job duties.

37. Insurance Agents report to North Star Managers who oversee and direct the nature of Agents' work by listening to calls, monitoring recordings of calls, and instructing Insurance Agents on North Star's policies.

38. The nature of the work Insurance Agents perform is similar and standardized for both their in-person and remote workers, as Defendant centrally controls and directs the nature of the work. North Star employs direct managers that each Insurance Agent must report to.

39. Insurance Agents who work remotely do not meet clients or customers at their homes, business, or at restaurants in order to make a sale. Rather, remote working Insurance Agents work from their home offices and make phone calls using the leads that North Star provides.

**II.     North Star Fails to Pay Insurance Agents for Mandatory Training Time**

40. After North Star hires them, Insurance Agents are required to complete North Star's training program. North Star makes Insurance Agents' employment conditional on their successful completion of North Star's training program.

41. In total, North Star's training usually takes two (2) to six (6) weeks to complete.

42. Insurance agents frequently work more than eight (8) hours per day and work six (6) or more days per week while training. However, because they do not make sales in the first stages of the training, and because their compensation is commission-based, they do not earn money while attending the required training.

43.     North Star's training program begins with seven business days of classroom instruction, for a total of approximately 52.5 hours of classroom time.

44.     During the classroom instruction, North Star instructs Insurance Agents to attend mandatory training classes on Zoom. Insurance Agents are required to keep their cameras on during the training so North Star can ensure they are participating.

45.     When Plaintiffs participated in the training, they estimate that there were over fifty (50) other Insurance Agents being trained at the same time.

46.     The classroom instruction portion of the training program focuses on the following topics: understanding and memorizing North Star's required insurance script, building a rapport, underwriting, calculating rates, and using North Star's Customer Relationship Management ("CRM") software.

47.     North Star also requires Insurance Agents to complete homework assignments outside of classroom time during the training period. Assignments included watching videos, memorizing the script, and practicing calculating rates. Insurance Agents are required to email the homework assignments to North Star once they are complete. The homework took Plaintiffs twenty (20) minutes to four (4) hours a night to complete.

48.     North Star knows that Insurance Agents spend time working outside of the classroom training because North Star managers question Insurance Agents about the assignments the next day.

49.     During training, Plaintiff Harrison spent approximately twelve (12) hours a day either in classroom training or doing homework.

50.     During training, Plaintiff Bente spent approximately eight (8) to nine (9) hours a day either in classroom training or doing homework.

51. Plaintiff Harrison routinely worked in excess of forty (40) hours per week between June and July 2022, often working approximately twelve (12) hours per day in order to complete the Zoom training, memorize the script, and complete the homework assignments.

52. Plaintiff Bente routinely worked in excess of forty (40) hours per week between April 6, 2022 and April 20, 2022.

**III.  North Star Controls the Manner and Means of Plaintiffs' Work**

53. North Star sends leads to Insurance Agents through outbound calls and inbound calls.

54. Outbound calls are cold-calls Insurance Agents make by auto-dialing potential customers and trying to sell them insurance.

55. Inbound calls are internal transfers from a transfer agent to an Insurance Agent. During an inbound call, a North Star employee uses an auto-dialer to connect with a potential client and they have a transfer agent pre-qualify the individual. Then, they transfer the pre-qualified individual to an available Insurance Agent.

56. Outbound calls generally result in less sales because the customer is receiving a cold call. Inbound calls generally result in greater sales because the customer is interested in purchasing insurance and has been pre-qualified.

57. After completion of the classroom instruction portion of the training program, Insurance Agents must complete a mix of calls that culminates in ten (10) hours of talk time and one sale. Before an Insurance Agent can receive any inbound calls, they must complete at least ten (10) sales on outbound calls.

58. "Talk time" is time Insurance Agents spend on the phone with new clients. Calls with existing clients do not count towards talk time minimums, even though sometimes it takes

multiple calls with an existing client to complete a sale.

59.     North Star requires Insurance Agents to have at least twenty-five (25) hours of talk time a week and a minimum of twenty (20) sales per month. If Insurance Agents are unable to match the sales or talk time expectations, North Star requires them to be re-trained and re-evaluated. If Insurance Agents continue to fail to meet North Star's expectations, they are fired.

60.     North Star managers monitor recordings of calls made by Insurance Agents.

61.     North Star managers track which calls are made to new clients versus old clients, or to insurance companies. Any time spent speaking with existing clients or insurance companies do not qualify as talk time. Based on this information, North Star managers determine how much talk time an Insurance Agent has.

62.     After completing a sale, Insurance Agents must finalize the potential client's paperwork. Talk time does not include time spent completing the required paperwork to complete a sale.

63.     North Star requires that the Insurance Agents use the CRM system's auto-dialer to make calls. Insurance Agents are not allowed to use their personal cell phones to make lead calls.

64.     North Star operates their auto-dialer system from 6 A.M. PST/8 A.M. CST to 3 P.M. PST/5 P.M. CST Monday through Friday.

65.     North Star expects and instructs Insurance Agents to work within the hours that their call center is open. Insurance Agents cannot receive or make calls on the CRM system outside of those hours.

66.     On the occasions when Plaintiff Harrison did not begin at 6 A.M. PST, North Star employees called, texted, sent messages through the Teams application, and emailed her until she began work.

67.     Insurance Agents are not able to use their own discretion or independent judgement when making calls.

68.     North Star requires Insurance Agents to follow a strict North Star script when conversing with clients and potential clients.

69.     North Star managers listen to the calls that Insurance Agents make to ensure that they follow the script. If Insurance Agents do not follow the script exactly, North Star requires the Insurance Agents to call clients back to go through the sections of the script that they missed, even if the initial call already resulted in a sale. At times, the follow-up call causes clients to question the abilities of the Insurance Agents, resulting in the loss of a sale.

70.     If an Insurance Agent routinely misses sections of the script, North Star lowers the amount of inbound calls Insurance Agents receive, resulting in less sales and commission.

71.     North Star requires all Insurance Agents to use North Star email addresses to conduct business.

72.     Insurance Agents begin their workday by signing into the CRM system which allows North Star to track their time spent working and the number of calls they make.

73.     North Star unilaterally selects the type and quantity of calls that Insurance Agents must complete each day. Insurance Agents cannot choose which calls to accept or reject without North Star penalizing them by providing less inbound calls. Because Insurance Agents are paid on a commission basis and inbound calls are more likely to produce a sale than outbound calls, Insurance Agents are dissuaded from rejecting calls.

74.     Insurance Agents' opportunity for profit or loss are wholly dependent on the types of calls that they get through North Star's CRM system.

75.     Every Monday morning, Insurance Agents attend a mandatory team meeting for

approximately an hour. Upon information and belief, there are hundreds of Insurance Agents that attend these meetings. During the meetings, North Star managers discuss the required sales script, train Insurance Agents on North Star's policies, and provide companywide updates. Insurance Agents are not paid for these required meetings.

76.　　To achieve the required talk time expectations, Insurance Agents, including Plaintiffs Bente and Harrison, worked an average of forty (40) to fifty (50) hours a week in order to reach twenty-five (25) hours of talk time.

77.　　On average, a call that might result in a sale takes between two (2) and three (3) hours to complete. After completion of a call, Insurance Agents provide the clients information to the Insurance Agency. At that time, clients might be denied by the insurance company. Thus, completion of a sale on the call does not guarantee that Insurance Agents will be paid a commission.

78.　　To complete sales, Plaintiff Harrison and Plaintiff Bente had to speak to clients after North Star was closed for the day because it was the only time the client could speak on the phone. When Plaintiff Bente told North Star managers that he was working past 5 P.M. CT, they told him that he should "do whatever is needed to get it done," or words to that effect.

79.　　Additionally, Plaintiff Bente worked approximately two (2) Saturdays a month to finish the paperwork required to complete a sale. Plaintiff Harrison also worked frequently on weekends throughout her employment to meet North Star's requirements.

80.　　Due to the volume of work and North Star's limited hours of operation, Insurance Agents are unable to take rest breaks and routinely work through their meal period. When Plaintiff Harrison attempted to take a lunch break, North Star's managers called and texted her, stating that the leads were going unanswered, and she had to get back on the phone.

## IV.    North Star's Compensation Model

81.    North Star uses a commission system that calculates total sales and commission to determine compensation.

82.    North Star controls Insurance Agents' opportunity for profit or loss by unilaterally deciding how much each Insurance Agent should be paid on each sale. Insurance Agents are unable to negotiate the commission amounts with North Star.

83.    In their training materials, North Star states that Insurance Agents receive $90 for each approved application, plus a commission based on the insurance premium amount. Insurance Agents receive 50% of the First-Year premium and subsequently lower rates for the following years premiums.

84.    Insurance Agents are paid out by the insurance companies, not North Star directly.

85.    Upon information and belief, North Star negotiates the amount of commission each Insurance Agent receives from the insurance companies.

86.    Insurance Agents receive an advance of 75% of nine (9) months' worth of approved applications upon beginning their employment. However, North Star has a "Charge Back Protection" system that allows clients to return their policies within thirty (30) days of purchase and receive their money back. If a client returns their policy, even if it was no fault of the Insurance Agent, North Star requires Insurance Agents to pay back the entire cost of the charge back from their next paycheck.

87.    During his tenure with North Star, Plaintiff Bente worked over forty (40) hours per week and received on average $250 per week. Despite having one of the highest sales ranks, Plaintiff Bente's average weekly pay was far below the federal or California state minimum wage and did not include overtime payments.

88. During her tenure with North Star, Plaintiff Harrison worked over forty (40) hours per week and received the equivalent of approximately $103 a week, far below the federal or California state minimum wages, and did not include overtime payments.

89. Upon information and belief, North Star's compensation policies and practices are the same for every Insurance Agent, regardless of their physical location.

## V. North Star's Compensation Plan and Misclassification of Insurance Agents as Independent Contractors Are Willful

90. North Star intentionally misclassifies Insurance Agents to avoid North Star's obligations under the FLSA and California state law. North Star saves thousands of dollars in avoiding payroll withholdings and other expenses associated with its core business by not providing Insurance Agents with proper minimum wage, health, pension, or other benefits ordinary employees are entitled to and enjoy.

91. North Star is aware that Insurance Agents are not properly compensated under the FLSA or applicable state laws because North Star's managers and other supervisory employees know that Insurance Agents attend unpaid training, do not receive minimum wage and overtime, and are subject to unlawful chargebacks.

92. As a large company with operations throughout the United States North Star has access to human resource expertise and legal counsel who can advise North Star on its FLSA and state wage and hour law compliance obligations.

93. North Star's actions in violation of the FLSA and state law are made willfully in an effort to avoid liability under the FLSA and state law.

94. Even though the FLSA and state laws require minimum wage and overtime premium compensation for hours worked over forty (40) hours per week, North Star did not pay Insurance Agents at least minimum wage and proper overtime compensation for overtime hours

worked.

95. Defendant knew, or absent its own recklessness should have known, that the Insurance Agents were entitled to minimum wage and overtime premiums.

96. Defendant knew or absent its own recklessness should have known, that the Insurance Agents were entitled to compensation for all time worked.

97. By failing to pay all the compensation owed to Plaintiffs and other Insurance Agents, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions and state laws.

98. Defendant has not made good faith efforts to comply with the FLSA and state laws.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

99. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

100. Plaintiffs desire to pursue their FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

101. Plaintiffs and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, inter alia, all such individuals worked pursuant to Defendant's previously described common pay practices and, as a result of such practices, were not paid for all hours worked and were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, inter alia, Defendant's common compensation, timekeeping and payroll practices.

102. Specifically, Defendant failed to compensate Plaintiffs for all hours worked and failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA and California state law for hours worked in excess of forty (40) per workweek.

103. The similarly situated employees are known to Defendant and are readily identifiable and may be located through Defendant's business records and the records of any payroll companies Defendant uses.

104. Defendant employs many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of the instant litigation through direct means, such as U.S. mail and/or other appropriate means and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

105. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the California Class as defined above.

106. The members of the California Class are so numerous and dispersed that joinder of all the members is impracticable. Upon information and belief, there are more than numerous members in the California Class.

107. Plaintiffs will fairly and adequately represent and protect the interests of the California Class because there is no conflict between the claims of Plaintiffs and those of the California Class, and Plaintiffs' claims are typical of the claims of the California Class. Plaintiffs' undersigned counsel is competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like the one at bar.

108. There are questions of law and fact common to the proposed California Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether North Star has violated and continues to violate California state law

through their policies and practices of not paying their Plaintiffs and the California Class for all hours worked and overtime compensation.

109.    Plaintiffs' claims are typical of the claims of the California Class in the following ways, without limitation: (a) Plaintiffs are members of the California Class; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the California Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the California Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the California Class; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the California Class members.

110.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the California Class predominate over any questions affecting only individual Class members. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The California Class are readily identifiable from Defendant's own employment records. Prosecution of separate actions by individual members of the California Class would create the risk of inconsistent or varying adjudications with respect to individual California Class members that would establish incompatible standards of conduct for North Star.

111.    A class action is superior to other available methods for adjudication of this

controversy because joinder of all members is impractical. Further, the amounts at stake for many of the California class members, while substantial, are not great enough to enable them to maintain separate suits against North Star.

112.     Without a class action, Defendant will retain the benefit of their wrongdoing, which will result in further damages to Plaintiffs and the California Class. Plaintiffs envision no difficulty in the management of this action as a class action.

### FIRST CAUSE OF ACTION
### Violation of the FLSA: Failure to Pay Minimum Wage
### (On Behalf Plaintiffs and the FLSA Collective)

113.     All previous paragraphs are incorporated as though fully set forth herein.

114.     The FLSA requires that covered employees be compensated not less than the federal minimum wage for all hours worked in a workweek. See 29 U.S.C. § 206(a)(1).

115.     The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

116.     Defendant is subject to the wage requirements of the FLSA because North Star is an "employer" under 29 U.S.C. § 203(d).

117.     Defendant's compensation scheme applicable to Plaintiffs and the FLSA Collective fails to comply with 29 U.S.C. § 206(a)(1).

118.     During all relevant times, Plaintiffs and the FLSA Collective were covered employees entitled to the above-described FLSA's protections. See 29 U.S.C. § 203(e).

119.     Defendant knowingly failed to compensate Plaintiffs and the FLSA Collective at a rate of not less than the federal minimum wage for all hours worked per week, in violation of 29 U.S.C. § 206(a)(1).

120.     Plaintiffs and the FLSA Collective are entitled to be paid minimum wage for all

hours worked in a workweek pursuant to 29 U.S.C. § 206(a)(1).

121.   Defendant, pursuant to its policies and practices, failed and refused to pay minimum wages to Plaintiffs and the FLSA Collective for all hours worked by maintaining a policy of only paying Insurance Agents for the time spent in live classroom trainings.

122.   Defendant knowingly failed to compensate Plaintiffs and the FLSA Collective at the minimum wage for all hours worked per week, in violation of 29 U.S.C. § 206(a)(1).

123.   Defendant also failed to make, keep, and preserve records with respect to Plaintiffs and the FLSA Collective sufficient to determine their wages, hours, and other conditions of employment, in violation of 29 C.F.R. § 516.2(a)(7).

124.   In violating the FLSA, Defendant has acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**SECOND CAUSE OF ACTION**
**Violation of the FLSA: Failure to Properly Pay Insurance Agents**
**(On Behalf of Plaintiffs and the FLSA Collective)**

125.   All previous paragraphs are incorporated as though fully set forth herein.

126.   The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he or she is employed. *See* 29 U.S.C. § 207(a)(1).

127.   Defendant is subject to the wage requirements of the FLSA because the Defendant is an "employer" under 29 U.S.C. § 203(d).

128.   At all relevant times, the Defendant is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

129.   During all relevant times, Insurance Agents are covered employees entitled to the

above-described FLSA protections. *See* 29 U.S.C. § 203(e).

130.    Insurance Agents are not exempt from the requirements of the FLSA.

131.    Insurance Agents are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

132.    Defendant knowingly fails to properly compensate Insurance Agents for all hours worked when they work in excess of forty (40) hours per week and fails to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29

133.    U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

134.    Defendant also fails to create, keep, and preserve accurate records with respect to work performed by the Insurance Agents sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

135.    In violating the FLSA, Defendant acts willfully and with reckless disregard of clearly applicable FLSA provisions.

136.    Pursuant to 29 U.S.C. § 216(b), employers such as the Defendant, who intentionally fail to pay an employee wage in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

### THIRD CAUSE OF ACTION
**Failure to Provide Regular Pay/Minimum Wages**
**Cal. Lab. Code §§ 1182.11, 1182.12, 1194, 1194.2, 1197, 1197.1;**
**Cal. Code Regs. tit. 8, § 11090**
**(On Behalf of Plaintiffs and the California and Aggrieved Employees)**

137.    All previous paragraphs are incorporated as though fully set forth herein.

138.    During the applicable statutory period, California Labor Code §§ 1182.11, 1182.12

and 1197, and the IWC Minimum Wage Order were in full force and effect and required that Defendant's hourly employees receive the minimum wage for all hours worked.

139. Section 2(H) of IWC Wage Order No. 9-2001 defines "hours worked" as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

140. California Labor Code § 1194(a) provides as follows: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum or overtime compensation, including interest thereon, reasonable attorneys' fees and costs of suit."

141. California Labor Code § 1194.2 provides that, in any action under § 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

142. California Labor Code section 1197.1 provides, in part: "(a) Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to a civil penalty, restitution of wages, and liquidated damages payable to the employee."

143. As alleged throughout, Plaintiffs, the California Class, and the Aggrieved Employees are not compensated for all hours worked.

144. Plaintiffs, the California Class, and the Aggrieved Employees did not enter into legally binding agreements with the Defendant to work for a lesser wage.

145.     North Star, pursuant to its policies and practices, knowingly fails to pay wages to Plaintiffs, the California Class, and the Aggrieved Employees for all their hours worked by misclassifying them as independent contractors.

146.     Defendant's conduct, as alleged herein, violates the aforementioned regulations because throughout the applicable time period, Defendant's policies, practices and procedures resulted in a failure to compensate Plaintiffs, the California Class, and the Aggrieved Employees for all hours worked.

147.     As alleged in more detail above, Defendant's standardized policies, practices and procedures resulted in Plaintiffs, the California Class, and the Aggrieved Employees being denied regular pay/minimum wages for regular hours worked by, *inter alia*, requiring them to work hours off the clock in order to complete their mandated job duties.

148.     California Labor Code § 1194.2 provides that, in any action under § 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

149.     As a direct and proximate result of Defendant's unlawful acts and/or omissions, as alleged herein, Plaintiffs, the California Class, and the Aggrieved Employees have been deprived, and continue to be deprived, of regular pay and mandated minimum wages for regular hours worked in an amount to be determined at trial, are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

150.     Wherefore, Plaintiffs, the California Class, and the Aggrieved Employees request relief as hereinafter provided.

## FOURTH CAUSE OF ACTION
### Failure to Provide Overtime Premium Pay
### Cal. Lab. Code §§ 200, 510, 1194, 1194.2; Cal. Code Regs. tit. 8, § 11090
### (On Behalf of Plaintiffs and the California and Aggrieved Employees)

151.    All previous paragraphs are incorporated as though fully set forth herein.

152.    California Labor Code § 510(a) provides as follows:

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one- half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work. . . .

153.    California Labor Code § 1194 provides as follows: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum or overtime compensation."

154.    California Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation." All such wages are subject to California's overtime requirements, including those set forth above.

155.    Pursuant to California Labor Code § 1198, the Industrial Welfare Commission provides the maximum hours of work and standard conditions of labor for California employees.

156.    Section 3(A) of IWC Wage Order No. 9-2001 provides in pertinent part: ". . . employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's

regular rate of pay for all hours worked over 40 hours in the workweek."

157. Defendant's conduct, as alleged herein, violates the aforementioned regulations because Defendant failed to properly compensate Plaintiffs, the California Class, and the Aggrieved Employees applicable overtime premium pay for hours worked in excess of eight (8) hours per workday, forty (40) hours per workweek, and/or hours worked on the seventh consecutive day in a workweek.

158. As alleged in more detail above, Defendant's policies, practices and procedures denied Plaintiffs, the California Class, and the Aggrieved Employees proper overtime premium compensation for overtime hours worked by, inter alia, requiring them to work extended hours in order to complete their job duties.

159. As a direct and proximate result of the aforementioned violations, Defendant damaged Plaintiffs, the California Class, and the Aggrieved Employees in amounts to be determined according to proof at time of trial, but in an amount in excess of the jurisdictional requirements of this Court.

160. Accordingly, Plaintiffs, the California Class, and the Aggrieved Employees are entitled to recover, and hereby seek, the unpaid balance of the full amount of deprived overtime premium pay earned for overtime hours worked, pre- and post-judgment interest, applicable penalties, attorneys' fees, costs of suit, and any further equitable relief this Court may deem just and proper. See Cal. Lab. Code § 1194; see also, Cal. Civ. Proc. Code § 1021.5.

161. Wherefore, Plaintiffs, the California Class, and the Aggrieved Employees request relief as hereinafter provided.

**FIFTH CAUSE OF ACTION**

**Failure to Authorize, Permit and/or Make Available Meal Periods**
**Cal. Lab. Code §§ 218.5, 218.6, 226.7, 512, 558.1; Cal. Code Regs. tit. 8, § 11090**
**(On Behalf of Plaintiffs and the California and Aggrieved Employees)**

162.    All previous paragraphs are incorporated as though fully set forth herein.

163.    California Labor Code §§ 226.7 and 512 and the applicable IWC Wage Orders require Defendant to authorize, permit, and/or make available timely and compliant meal and rest periods to its employees. Labor Code §§ 226.7 and 512 and the IWC Wage Orders prohibit employers from employing an employee for more than five (5) hours without a meal period of not less than thirty (30) minutes, and from employing an employee more than ten (10) hours per day without providing the employee with a second meal period of not less than thirty (30) minutes. Section 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten (10) minutes of net rest time per four (4) hours, or major fraction thereof of work, and to pay employees their full wages during those rest periods. Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable wage orders.

164.    Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize and permit a required meal period must, as compensation, pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not authorized and permitted. Similarly, an employer must pay an employee denied a required rest period one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not authorized and permitted.

165.    Pursuant to California Labor Code § 1198, the Industrial Welfare Commission provides the maximum hours of work and standard conditions of labor for California employees.

166.     Section 11 of IWC Wage Order No. 9-2001 provides in pertinent part:

> (A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . .
> (B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes . . .
> (C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked.

167.     Despite these requirements, Defendant failed to authorize and permit Plaintiffs, the California Class, and the Aggrieved Employees to take the timely and compliant off-duty meal periods to which they are entitled. Plaintiffs, the California Class, and the Aggrieved Employees routinely worked through their meal periods.

168.     Relatedly, despite failing to provide Plaintiffs, the California Class, and the Aggrieved Employees lawful uninterrupted off-duty meal periods, Defendant's standardized policies, practices and procedures systematically denied Plaintiffs, the California Class, and the Aggrieved Employees proper premium pay at the rate of one (1) hour of pay at their regular pay rates for each non-compliant meal period.

169.     Accordingly, Plaintiffs, the California Class, and the Aggrieved Employees seek compensation for Defendant's failure to authorize and permit meal periods, plus interest, attorneys' fees, expenses, and costs of suit, and further request relief as hereafter provided.

170.     Wherefore, Plaintiffs, the California Class, and the Aggrieved Employees request relief as hereinafter provided.

### SIXTH CAUSE OF ACTION
**Failure to Provide and Maintain Accurate and Compliant Wage Records**
**Cal. Lab. Code §§ 226**
**(On Behalf of Plaintiffs and the California and Aggrieved Employees)**

171.     All previous paragraphs are incorporated as though fully set forth herein.

172. California Labor Code § 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

173. California Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiffs seek to recover actual damages, costs, and attorneys' fees under this section.

174. Defendant failed to provide complete and accurate itemized wage statements to Plaintiffs, the California Class, and the Aggrieved Employees in accordance with Labor Code § 226(a) and the IWC Wage Orders.

175.     Defendant's failure to comply with Labor Code § 226(a) was and continues to be knowing and intentional.

176.     Plaintiffs, the California Class, and the Aggrieved Employees suffered injury as a result of Defendant's knowing and intentional failure to provide timely, accurate itemized wage statements to Plaintiffs, the California Class, and the Aggrieved Employees in accordance with Labor Code § 226(a). In particular, the injury stemming from Defendant's violations is evidenced by this live and active dispute regarding unpaid wages, including overtime pay, between the Parties. As a result of Defendant's violations, Plaintiffs, the California Class, and the Aggrieved Employees are required to undertake the difficult and costly task of attempting to reconstruct Defendant's incomplete and inaccurate time and pay records to ensure that they are paid for all hours worked as required by California law.

177.     Defendant is liable to Plaintiffs, the California Class, and the Aggrieved Employees alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon. Furthermore, Plaintiffs, the California Class, and the Aggrieved Employees are entitled to an award of attorneys' fees and costs as set forth below and herein.

178.     Wherefore, Plaintiffs, the California Class, and the Aggrieved Employees request relief as hereinafter provided.

**SEVENTH CAUSE OF ACTION**
**Unlawful Deductions from Wages Cal. Lab. Code §§ 221, 224**
**(On Behalf of Plaintiffs and the California and Aggrieved Employees)**

179.     All previous paragraphs are incorporated as though fully set forth herein.

180.     California Labor Code § 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to employee."

181.    California Labor Code § 221 and related statues, along with California's fundamental public policy protecting wages, prohibit employers from subjecting employees to unanticipated or unpredicted reductions in their wages; or taking other unpredictable deductions that may impose a special hardship on employees.

182.    California Labor Code § 224 provides, in part, that an employer can lawfully withhold an employee's wages only when "the employer is required or empowered so to do by state or federal law or when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions." Labor Code § 224 clearly prohibits any deduction from an employee's wages which is not either authorized by the employee in writing or permitted by law.

183.    Despite these requirements, Defendant knowingly and willfully failed to comply with Labor Codes §§ 221 and 224 by making unauthorized and unlawful deductions to the wages rightfully earned and owing to Plaintiffs, the California Class, and the Aggrieved Employees Members. In particular, the injuries committed unto Plaintiffs and California Class Members stem from Defendant's automatic deductions for unauthorized and unsolicited health insurance premiums.

184.    Furthermore, Defendant committed additional injuries unto Plaintiffs, the California Class, and the Aggrieved Employees Members by making unlawful deductions to their wages to recover amounts previously overpaid due to the negligence of the Defendant and for which the Plaintiffs and California Class Members bore no fault.

185.    Defendant is liable to Plaintiffs, the California Class, and the Aggrieved Employees Members alleged herein for the unlawful deductions in addition to the civil penalties set forth below, with interest thereon. Furthermore, Plaintiffs, the California Class, and the Aggrieved

Employees are entitled to an award of attorneys' fees and costs as set forth below and herein.

186. Wherefore, Plaintiffs, the California Class, and the Aggrieved Employees request relief as hereinafter provided.

**EIGHTH CAUSE OF ACTION**
**Failure to Reimburse Employee for Work Related Expenses Cal. Lab. Code § 2802**
**(On Behalf of Plaintiffs and the California and Aggrieved Employees)**

187. All previous paragraphs are incorporated as though fully set forth herein.

188. California Labor Code § 280(a) provides:

An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

2. While acting on the direct instruction of Defendant and discharging their duties for Defendant, Plaintiffs and California Class Members incurred work-related expenses which Defendant, as a matter of policy, did not reimburse. The unreimbursed expenses include, but are not limited to: costs of obtaining the required state licenses to sell insurance, computer, USB headset with microphone, a hard-wire high-speed constant internet connection, Microsoft Windows 7, 8, or 10, and Microsoft Excel.

189. Defendant willfully refused, and continues to refuse, to indemnify Plaintiffs, the California Class, and the Aggrieved Employees for losses incurred in direct consequence of the discharge of their duties for Defendant, Defendant has violated California Labor Code § 2802.

190. As a direct and proximate result of Defendant's conduct, Plaintiffs, the California Class, the Aggrieved Employees have suffered substantial losses.

191. By unlawfully failing to reimburse Plaintiffs, the California Class, the Aggrieved Employees' business expenses, Defendant is liable for reasonable attorneys' fees and costs under

California Labor Code § 2802(c).

<h1 style="text-align:center">NINTH CAUSE OF ACTION</h1>
<strong>Waiting Time Penalties Cal. Lab. Code §§ 201-203</strong><br>
<strong>(On Behalf of Plaintiffs and the California and Aggrieved Employees)</strong>

192. All previous paragraphs are incorporated as though fully set forth herein.

193. California Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

194. California Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

195. California Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days.

196. Plaintiffs and some of the California Class Members have left their employment with the Defendant during the statutory period, at which time the Defendant owed them unpaid wages. These earned, but unpaid, wages derive from time spent working through their meal and rest breaks, from time spent outside of their scheduled and paid shifts performing other work-related activities, and overtime compensation that was not accounted for in the performance of off-the-clock work.

197. Defendant willfully refused, and continues to refuse, to provide Plaintiffs, the California Class, and the Aggrieved Employees with meal and rest period premium pay and with

payment for off-the-clock work performed. Defendant is aware that Plaintiffs, the California Class, and the Aggrieved Employees regularly miss or have interrupted their meal and rest breaks as a result of Defendant's unlawful policies and practices, but Defendant nevertheless refuses to authorize premium pay for missed or interrupted meal and rest periods. Likewise, as alleged above, although Defendant knew, and continues to know, that Plaintiffs, the California Class, and the Aggrieved Employees performed required off-the-clock work, Defendant still refuses to pay Plaintiffs, the California Class, and the Aggrieved Employees for the off-the-clock work performed.

198.    As such, Defendant willfully refused and continues to refuse to pay Plaintiffs and those members of the California Class that left their employment with the Defendant all the wages that were due and owing them upon the end of their employment. As a result of Defendant's actions, Plaintiffs, the California Class, and the Aggrieved Employees Members suffered and continue to suffer substantial losses, including lost earnings and interest.

199.    Defendant's willful failure to pay the former employees the wages due and owed to them constitutes a violation of Labor Code §§ 201-202. As a result, Defendant is liable to them for all penalties owing pursuant to Labor Code §§ 201-203.

200.    In addition, Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty (30) days from the time the wages were due. Therefore, the former employees are entitled to penalties pursuant to Labor Code § 203, plus interest.

201.    Wherefore, Plaintiffs, the California Class, and the Aggrieved Employees request relief as hereinafter provided.

**TENTH CAUSE OF ACTION**
**Violation of California's Unfair Business Practices Cal.**
**Business & Professions Code §§ 17200, *et seq.***
**(On Behalf of Plaintiffs and the California and Aggrieved Employees)**

202.    All previous paragraphs are incorporated as though fully set forth herein.

203.    California Business and Professions Code §§ 17200, et seq. prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

204.    "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

205.    "[T]he term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." Cal. Bus. & Prof. Code § 17201.

206.    California Business & Professions Code § 17203 provides that the Court may make such orders or judgements as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

207.    As a direct and proximate result of the aforementioned acts and practices, Plaintiffs, the California Class, and the Aggrieved Employees have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

208.    Business and Professions Code § 17206 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition. Plaintiffs, the California Class, and the Aggrieved Employees are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint.

209.    California Business and Professions Code § 17204 allows a person injured by the

unfair business acts or practices to prosecute a civil action for violation of the UCL.

210. California Labor Code § 90.5(a) states that it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

211. Defendant's standardized acts and practices described throughout constitute unfair, unlawful, and fraudulent business practices and unfair competition, within the meaning of the UCL. These acts and practices have, inter alia, taken from Plaintiffs, the California Class, and the Aggrieved Employees wages rightfully earned by them, while enabling the Defendant to gain an unfair competitive advantage over law-abiding employers and competitors.

212. As a direct and proximate result of the aforementioned acts and practices, Plaintiffs, the California Class, and the Aggrieved Employees have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

213. Plaintiffs' success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiffs sue on behalf of themselves, and others similarly situated. Plaintiffs, the California Class, and the Aggrieved Employees seek and are entitled to unpaid wages, declaratory relief, and all other equitable remedies owing to them. Attorneys' fees are appropriate pursuant to Code of Civil Procedure § 1021.5 and otherwise.

214. Wherefore, Plaintiffs, the California Class, and the Aggrieved Employees request relief as hereinafter provided.

## ELEVENTH CAUSE OF ACTION
### Penalties Pursuant to Labor Code §§ 2699(a) *et seq.*
### (Against Defendant)

215. All previous paragraphs are incorporated as though fully set forth herein.

216. California Labor Code § 2699 authorizes an aggrieved employee, on behalf of his or herself or other current or former employees, to bring a civil action to recover penalties against his or her employer pursuant to the procedures specified in § 2699.3.

217. California Labor Code § 2699(a) provides:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees.

218. California Labor Code § 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

219. California Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one–half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

220. California Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are

paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

221.    California Labor Code § 280(a) provides:

An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

222.    California Labor Code § 203 provides, in relevant part:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

223.    Plaintiffs seek civil penalties pursuant to Labor Code § 2699(a) for each violation of Labor Code § 1994(a) and § 510 alleged above, as well as any provision regulating hours and days of work in any order of the IWC.

224.    Plaintiffs also seek civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendant, alleged above, to provide Plaintiffs and the Aggrieved Employees compliant meal and rest periods in compliance with Labor Code § 512.

225. Plaintiffs also seek civil penalties pursuant to California Labor Code § 2699(a) for each failure by Defendant, alleged above, to provide Plaintiffs and the Aggrieved Employees an accurate, itemized wage statement in compliance with California Labor Code §226(a) in the amounts established by Labor Code § 226(e), as prayed for herein.

226. Plaintiffs also seek civil penalties pursuant to Labor Code § 2802 for each failure by Defendant, alleged above, to reimburse and indemnify Plaintiffs and Aggrieved Employees members for all necessary expenditures and losses by Aggrieved Employees members in direct consequence of the discharge of their duties.

227. Plaintiffs also seek civil penalties pursuant to California Labor Code § 2699(a) for each failure by Defendant, as alleged above, to timely pay all wages owed to Plaintiffs and the Aggrieved Employees in compliance with California Labor Code § 201-202 in the amounts established California Labor Code § 203. Plaintiffs seek such penalties as an alternative to the penalties available under California Labor Code § 203, as prayed for herein.

228. Pursuant to California Labor Code § 2699.3(a)(1) and (2), Plaintiffs provided the Labor and Workforce Development Agency ("LWDA") with notice of her intention to file this claim. Sixty-five calendar days have passed without notice from the LWDA. Plaintiffs satisfied the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

229. Plaintiffs seek the aforementioned penalties on behalf of the State, other putative Class members, and herself as set forth in Labor Code § 2699(g)(i).

230. Defendant is liable to Plaintiffs, Aggrieved Employees members, and the State of California for the civil penalties set forth in this Complaint, with interest thereon. Plaintiffs are also entitled to an award of attorneys' fees and costs as set forth below.

231. Wherefore, Plaintiffs request relief as hereinafter provided.

# TWELFTH CAUSE OF ACTION
## Penalties Pursuant to Labor Code § 2699(f)
### (Against Defendant)

232.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

233.    California Labor Code § 2699(f) provides:

> For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . . (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

234.    To the extent than any violation alleged herein does not carry penalties under California Labor Code § 2699(a), Plaintiffs seek civil penalties pursuant to California Labor Code § 2699(f) for Plaintiffs and Aggrieved Employees Members each pay period in which he or she was aggrieved, in the amounts established by California Labor Code § 2699(f).

235.    Pursuant to California Labor Code § 2699.3(a)(1) and (2), Plaintiffs have provided the LWDA with notice of her intention to file this claim. Sixty-five calendar days have passed without notice from the LWDA. Plaintiffs satisfied the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

236.    Plaintiffs seek the aforementioned penalties on behalf of the State, other Aggrieved Employees members, and themselves as set forth in Labor Code § 2699(g)(i).

237.    Defendant is liable to Plaintiffs, Aggrieved Employees Members, and the State of California for the civil penalties set forth in this Complaint, with interest thereon.

238.    Plaintiffs are also entitled to an award of attorneys' fees and costs as set forth below.

239.    Wherefore, Plaintiff's relief as hereinafter provided.

**PRAYER FORRELIEF**

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the California Class;

d. Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA, California Labor Code, and all other laws of the State of California;

e. For a declaratory judgment that Defendant violated the California Labor Code and public policy as alleged herein;

f. For a declaratory judgment that Defendant violated Business and Professions Code § 17200, *et seq.*, as a result of the aforementioned violations of the Labor Code and of California public policy protecting wages;

g. For a declaratory judgment that Defendant violated the Fair Labor Standards Act as alleged herein;

h. For an order awarding Plaintiffs, the Collective, California Class, and all Aggrieved Employees liquidated and compensatory damages, including lost wages, earnings, and other employee benefits, restitution, and all other sums of money owed to Plaintiffs, the Collective, the California Class, ad all aggrieved employees together with interest on these amounts, according to proof;

i. For an order awarding Plaintiffs and the Collective civil penalties pursuant to the FLSA with interest thereon;

j. For an order awarding Plaintiffs and the California Class civil penalties pursuant to the Labor Code provisions cited herein, with interest thereon;

k. For an order awarding Plaintiffs and the California Class exemplary damages pursuant to California law;

l. For an award of reasonable attorneys' fees as provided by the California Labor

Code, California Code of Civil Procedure § 1021.5, the FLSA, laws of the state of California, and/or other applicable law;

m. For all costs of suit;

n. For interest on any damages and/or penalties awarded, as provided by applicable law; and

o. For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

Dated: August 31, 2023

Respectfully submitted,

/s/ *S. Cody Reinberg*
S. Cody Reinberg #66174
**HKM EMPLOYMENT ATTORNEYS LLP**
7382 Pershing Ave., 1W
St. Louis, MO 63130
Tel/Fax: 314.391.9557
creinberg@hkm.com


Camille Fundora Rodriguez*
Alexandra K. Piazza*
Mariyam Hussain*
Olivia Lanctot*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
crodriguez@bm.net
apiazza@bm.net
mhussain@bm.net
olanctot@bm.net

*Pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Proposed Classes*